IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CR3140 |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH MONDAY, | ) | |
| | ) | REPORT, RECOMMENDATION, |
| | | AND ORDER |
| | ) | |
| Defendant. | ) | |


A hearing was held before me on August 16, 2005 on the defendant's motion to suppress statements he made to a law enforcement officer on February 26, 2001. At the conclusion of the hearing the court took the matter under advisement. I now recommend that the motion be denied in all respects.


FACTS


On February 22, 2001 at approximately 10:45 p.m. Beatrice, Nebraska police officer Shawn Velte contacted the defendant at his residence and advised defendant that he was the subject of a reported domestic assault in the early morning hours of that day. Velte told defendant that "He wasn't under arrest; I just needed to talk with him," and "I told him I needed him to come to the police department so I could talk with him." Defendant agreed to do so. Velte did not advise defendant that he did not have to go to the

police station.  Defendant then accompanied Velte to the station in
Velte's vehicle.   Defendant was not handcuffed or otherwise
restrained.

Once at the station Velte interviewed defendant in an
interview room.  At the commencement of the interview, before any
questions were asked, Velte advised defendant of his *Miranda*[1]
rights and had the defendant answer each question ("Do you
understand that?") in writing below each such right as set forth on
a form. Defendant then signed the form.  (Exhibit 1).

Velte and the defendant were the only occupants of the
interview room.   Although Velte was armed and his weapon was
clearly visible, the gun remained holstered at all times.  Velte
made no threats or promises to the defendant, and did not coerce
him to speak.  Defendant appeared to understand the circumstances,
to know who the officer was, to know their location, and his
answers to Velte's questions "tracked" with the questions.

During the interview defendant admitted that he had assaulted
his girlfriend in the early morning hours that day, and that he had
done so in an attempt to prevent her from using methamphetamine.
Defendant also said that she got the meth from one Randy Jurgens.
In her anger the girlfriend had "attacked" defendant, and the
defendant stabbed her.  These were the only mentions of any illegal
drugs during the interview.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Because of these admissions, at the conclusion of the interview defendant was cuffed and arrested for the domestic assault. He was taken to the Gage County Jail. Once the booking process was completed, Velte had no further contact with the defendant.

Four days later Investigator Ernest Reiss, also of the Beatrice Police Department, was advised by voice mail from an employee of the Gage County Jail that the defendant was in the jail and was requesting to speak with a drug investigator. Reiss had previously done surveillance on the defendant's home and thus knew who he was, but had never talked with him. Reiss did not know how long the message had been on his voice mail machine before he heard it.

After receiving the message Reiss went to the jail that day, February 26, around lunchtime. There was no evidence that Reiss had any knowledge of defendant's prior interview with Officer Velte, and Reiss did not recall if he had been so advised. He testified, however, that he did not speak with Velte prior to conducting the interview of defendant. Reiss was in street clothes and was not armed. The defendant was brought to the jail's library, a room about 10' X 10' with bookshelves, a table and chairs. Only Reiss and the defendant were present, and the door was closed, except for a brief period when jail staff brought defendant his lunch. Both men were seated at the table. The interview was tape recorded, but Reiss was subsequently unable to locate it, so he now thinks he destroyed it or recorded over it once he had completed his report.

At the commencement of the interview Reiss told defendant that he was there at defendant's request, and defendant acknowledged that.  No *Miranda* warnings were given, and defendant did not say anything to Reiss about changing his mind after he told the jail employee of his wish to speak with a drug investigator.  Defendant began the conversation by saying that "someone else was 'partly responsible' for the assault," referring to the charge for which defendant was in jail.  Reiss testified that he did not really interrogate defendant, but instead "mostly" just listened to the defendant and asked "clarifying questions."  Defendant proceeded to advise Reiss about some people who were involved with methamphetamine in the Beatrice area, including Brian Jurgens.  He also told Reiss that he did not like Jurgens because Jurgens had previously supplied meth to the defendant; he thought Jurgens was supplying meth to defendant's girlfriend; and using meth caused defendant and his girlfriend to fight.  Reiss had had previous knowledge that defendant may be involved in meth trafficking in the area.

During the interview Reiss made no threats or promises, and did not attempt to coerce defendant to speak.  Defendant appeared rational, answered Reiss's questions, and had no signs of impairment.  He appeared to Reiss to be speaking voluntarily and freely.  The interview lasted approximately one hour, after which the defendant was taken back to his cell by a correctional officer.

DISCUSSION

Defendant argues that the defendant's statements were not voluntary, and new *Miranda* warnings were required in order for the government to use his statements during the February 26, 2001 interview.

First, regarding the voluntariness issue, there is no evidence of any overreaching or coercive actions that would even raise a serious issue about whether defendant was speaking voluntarily, and police overreaching is the principal requirement for a finding that a suspect's statements were not voluntarily given. *Colorado v. Connelly*, 479 U.S. 157 (1986).

> In reviewing police tactics to obtain a confession under the Due Process Clause, we focus on the crucial element of police overreaching. *Colorado v. Connelly*, 479 U.S. 157, 163, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). However, even though the police use overreaching tactics such as the use of threats or violence, or the use of direct or indirect promises, such promises or threats will not render the confession involuntary unless it overcomes the defendant's free will and impairs his capacity for self determination. *Smith v. Bowersox*, 311 F.3d 915, 922 (8th Cir.2002), cert. denied, 540 U.S. 893(2003). Ours is a totality-of-the-circumstances inquiry. We consider, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition. Id.

*Sheets v. Butera*, 389 F.3d 772, 778-779 (8th Cir. 2004).  As set forth above, police overreaching is not enough.  Even if the police are found to have engaged in overreaching or coercive tactics, if the statement is to be suppressed, the improper police actions must be shown to have overborne the suspect's will to remain silent. *Connelly* at 164 (defendant's mental condition cannot render his confession involuntary unless it coincides with improper conduct by the police to overcome his will to remain silent); *Smith v. Bowersox*, 311 F.3d 915, 922 (8th Cir. 2003); *United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995)(Police overreaching will not alone cause statements to be suppressed; it must be shown to have overcome defendant's free will and impaired his capacity for self determination).

In this case there is no evidence of any police overreaching of any kind.  To the contrary, Defendant requested the interview and largely spoke to Reiss with his own facts and revelations without any need for Reiss to interrogate him at all, except to clarify his statements.  His comments made to Investigator Reiss were voluntary.

Defendant also claims that the police were required to re-advise defendant of his *Miranda* rights before commencing the interview on February 26.  The *Miranda* warnings must be given to a suspect who is both "interrogated" and "in custody."  In this case defendant was obviously "in custody," as he was being held at the jail.  Although there is ambiguity as to whether defendant was "interrogated," (*See, United States v. Koontz*, 143 F.3d 408, 411 (8th Cir. 1998)) I shall assume that the officer's "clarifying" questions were, indeed, interrogating.  Thus, the only issue is

6

whether new *Miranda* warnings were required when Reiss began the interview with the defendant.

There are relatively few reported cases addressing this issue. In *Wyrick v. Fields*, 459 U.S. 42 (1982) the Court reversed an Eighth Circuit decision which had established a *per se* rule that when a suspect is re-questioned after completion of a polygraph test, after having earlier been advised of his *Miranda* rights before the test, a new warning of those rights must be given. (*Fields v. Wyrick*, 682 F.2d 154 (1982)). The Supreme Court, however, rejected such a rule and held that the totality of the circumstances must be examined to determine whether the suspect remembered and understood his rights.

> When the suspect has initiated the dialogue, *Edwards* makes clear that the right to have a lawyer present can be waived: "If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be 'interrogation.' In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." 451 U.S., at 486, n. 9.

*Wyrick v. Fields*, 459 U.S. 42, 46, *quoting Edwards v. Arizona*, 451 U.S. 477, 486, n.9 (1981). In applying this test, the courts of appeals have found varying lengths of time between the giving of

the *Miranda* warnings and a subsequent suspect-initiated interview
did not violate the suspect's rights.  See, e.g., *United States v.
Rodriguiz-Preciado,* 399 F.3d 1118 (9th Cir. 2005) (Sixteen hours);
*United States v. Boyd*, 180 F.3d 967 (8th Cir. 1999) (One and one-
half to two-hours); *United States v. Frankson*, 83 F.3d 79, 82 (4th
Cir. 1996) (two and one-half hours)(collecting cases).  I have
found no reported decision, however, and none has been cited by
counsel, upholding a four-day delay between a suspect's waiver of
his *Miranda* rights and his later initiation of a conversation
unrelated to the offense being investigated at the time of the
earlier waiver.  Nor have I found any case in which clearly holds
that a four-day delay in such circumstances is *per se* a violation
of the Fifth Amendment rights protected by *Miranda*.  I therefore
review the defendant's claims on the totality of the circumstances.

The Defendant:

     First, defendant is 31 years old and has a G.E.D.  He is also
a methamphetamine addict, and told the pretrial services officer
after his arrest in this case that he had been taking the drug
intravenously daily for two and one-half years.


     His prior criminal record is replete with driving offenses,
particularly driving while his operator's license was suspended.
He has been arrested numerous times, and it appears, although it is
not clear, that three of these arrests were on felony charges[2]:
(1) At age 15 for burglary; (2) At age 25 on felony possession of
marijuana; (3) At age 28 on a charge of possession of marijuana,

---

     [2] Although driving under suspension can be a felony offense
in many, if not most, jurisdictions, I consider these arrests as
misdemeanors.

for which he is currently the subject of an outstanding felony bench warrant.  Thus, although his criminal record is not a lengthy list of felonies, it does include instances in which he more than likely was advised of his *Miranda* rights.

Defendant also has a history of mental and emotional problems, including two suicide attempts; however, following an evaluation at the Federal Bureau of Prisons Metropolitan Correctional Center earlier this year, despite being diagnosed with Antisocial Personality Disorder, he was found competent to stand trial in this case.  The evaluation report describes his strengths as having "average intelligence [and] presence of insight regarding his psychological difficulties."

Despite the fact that four days had elapsed since defendant was last advised of his *Miranda* rights, there is no evidence that he had forgotten them or was not cognizant of them.  There is no evidence that he changed his mind before Reiss arrived to talk with him and had to be cajoled back to his earlier willingness to talk. In fact, his actions imply very strongly that he knew his rights and chose to waive them by initiating the interview in hopes of bettering his own position and cutting off the supply of methamphetamine to his girlfriend.  Even if he had invoked his right to remain silent, an invocation of that right can be waived by subsequently making a voluntary confession to the police or the suspect's otherwise acting as though he has waived his right to remain silent and to an attorney; that is, a valid waiver can be inferred from the suspect's behavior.  *North Carolina v. Butler,* 441 U.S. 369, 374-75 (1979).  Such an inference is appropriate here.

<u>The Interrogation</u>:

There is, as noted above, nothing in the evidence before me that would support a finding that Investigator Reiss engaged in any actions whatsoever that would constitute overreaching. He was there only because of the defendant's request; he did nothing to encourage defendant to give him information; and there is no contention that defendant's will to remain silent was overborne. His questioning was limited to "clarifying" defendant's self-initiated comments. He asserted no pressure on the defendant by way of threats, deceptions, promises, or other coercive tactics.

<u>The Information</u>:

The subject matter of the interview was unrelated to the charge on which defendant was being held in the jail. Although it touched upon the reasons the assault took place, it had nothing to do specifically with that charge. Nor is there any evidence that Investigator Reiss attempted to guide defendant into making inculpatory statements about either the assault or the use of methamphetamine. Defendant had already confessed to the assault, and Reiss testified he already had information implicating the defendant and the people he mentioned in the meth trade in and around Beatrice.

In sum, there is no evidence that would support suppressing the statements made by the defendant on February 26, 2001, and the defendant's motion should be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. §636(b)(1)(B), that the motion to suppress, filing 29, be denied in all respects.

10

The parties are notified that the failure to file a timely objection to this recommendation in accordance with the local rules may be held to be a waiver of any right to appeal the adoption of it by the district judge.


FURTHER, IT HEREBY IS ORDERED, Trial of this matter is scheduled to commence at 9:00 a.m. on October 24, 2005, before the Hon. Richard G. Kopf, United States District Judge. Jury selection will be at commencement of trial. Trial is scheduled for a duration of five trial days.


DATED August 31, 2005


BY THE COURT:

s/ David L. Piester
United States Magistrate Judge

11