IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:04CR3140 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JOSEPH W. MONDAY, | ) | |
| | ) | |
| Defendant. | ) | |

The defendant, Joseph W. Monday ("Monday"), was sentenced on February 14, 2006, to 292 months' imprisonment for his admitted involvement in a conspiracy to distribute methamphetamine. On June 20, 2007, after the sentence was affirmed on appeal, Monday filed a motion pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel.

Initial review of the § 2255 motion was conducted on July 25, 2007, and, as directed and authorized by the court, the government filed an answer and a motion for summary judgment on November 15, 2007. The government's motion for summary judgment is supported by the affidavit of Monday's former attorney, who represented Monday both at trial and on appeal. On March 21, 2008, Monday responded to the summary judgment motion and also filed a motion for leave to amend his § 2255 motion to add several new claims.

Upon careful review, I find and conclude that the government's motion for summary judgment should be granted, and that Monday's motion for leave to amend should be denied because it would be futile to allow the proposed amendments. Final judgment therefore will be entered denying Monday's motion to vacate, set aside, or correct his sentence, and dismissing this § 2255 proceeding with prejudice.

### *I. Government's Motion for Summary Judgment*

A moving party is entitled to summary judgment when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *King v. Hardesty*, 517 F.3d 1049, 1056 (8th Cir. 2008). A § 2255 motion "can be dismissed without a hearing if (1) the [defendant's] allegations, accepted as true, would not entitle the [defendant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir.2003) (citation omitted).

Monday alleges that his defense attorney, Michael T. Levy ("Levy"), failed to provide effective assistance of counsel at each stage of the criminal proceeding: (1) At the pretrial phase, Monday asserts that Levy (a) refused and failed to provide him with copies of discovery materials from the government; (b) refused and failed to maintain contact with him, and refused to accept his collect telephone calls; (c) refused to discuss the case; and (d) never provided the government's plea offers to him. (2) At trial, Monday complains that Levy (a) conceded during his opening statement that Monday was guilty of the crimes charged; (b) should not have permitted Monday to testify; (c) should have compelled Monday to plead guilty before the jury returned its verdict; and (d) should only have contested the drug amount at sentencing following a guilty plea. (3) At sentencing, Monday asserts that Levy was unprepared to argue for a reduction based on acceptance of responsibility. (4) On appeal, Monday claims that Levy filed a fraudulent, false declaration with the Eighth Circuit which resulted in the early termination of his direct appeal rights.

Under the Supreme Court's well-established standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was both deficient and prejudicial. To show deficient performance, "the defendant must show that counsel's

representation fell below an objective standard of reasonableness." *Id.* at 687-88. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. The court does not need to address the competency of counsel's performance if the prejudice issue is dispositive. *Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir.1998); *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

### A. *Claims of Ineffective Assistance of Counsel Prior to Trial*

Under penalty of perjury, Monday states in his § 2255 motion that his attorney refused and failed to provide him with copies of discovery materials, to accept his telephone calls, or to discuss the strengths and weaknesses of the case, thereby "leaving [him] completely blind, and uninformed for the entire pretrial phase of the prosecution." (Filing 109, at 12.) Attorney Levy specifically disputes each of these statements in his own affidavit. (Filing 116-2, ¶¶ 2-4.) Despite this factual dispute, I conclude that the government is entitled to the entry of summary judgment on these claims because Monday has failed to show that he was prejudiced in any way by the alleged lack of attorney-client communications.

There are instances when counsel's errors are so great or the denial of counsel is so complete as to create a presumption of prejudice, eliminating the need to prove *Strickland* prejudice. *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003). For example, when counsel completely fails to subject the prosecution's case to meaningful adversarial testing, there has been a denial of Sixth Amendment rights

making the adversary process presumptively unreliable. *Id.* However, prejudice will be presumed "only when surrounding circumstances justify a presumption of ineffectiveness[,]" and courts have been appropriately cautious in presuming prejudice. *Id.* at 678 (quoting *United States v. Cronic*, 466 U.S. 648, 662 (1984)). When the Supreme Court "spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, [it] indicated that the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 696-97 (2002). Apart from circumstances of such magnitude, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt, *i.e.*, *Strickland* prejudice. *White*, 341 F.3d at 678. The burden of proving ineffective assistance of counsel rests with the defendant. *Id.*

Monday also states that "defense counsel never relayed the government[']s plea offer(s) to the defendant[,]" and claims that "[i]f he had, Mr. Monday would have plead[ed] guilty to the charged offenses, and the sentence ultimately imposed from a resulting plea of guilty, would have been significantly shorter . . . ." (Filing 109, at 13.) Monday claims that he "specifically told Mr. Levy that [he] wanted to plead guilty, and instructed [Levy] to negotiate a plea agreement with the Assistant U.S. Attorney to resolve this case." (Filing 109-3, at 2.) In response, Levy states:

> Mr. Monday alleges that I did not provide him with plea offers made by the government. This is untrue. I went over at length the plea offers made by the government. On or about June 29, 2005, I received a plea offer from the United States Attorney's Office, a copy of which is attached hereto and marked Exhibit 1.[1] On July 4, 2005, I drove from

---

[1] This plea offer provided that Monday would plead guilty to conspiracy to distribute over 50 grams of a methamphetamine mixture, which would expose him to at least 5 years and up to 40 years in prison. (Filing 116-3, ¶ 1.) It further provided that the parties would agree that "the most readily provable quantity of drugs for Sentencing Guidelines §2D1.1 is between 500 grams and 5 kilograms of a mixture or substance containing methamphetamine. (*Id.*, ¶ 9.)

4

>Omaha, Nebraska to the Saline County Jail where the defendant was being housed. I discussed with the defendant all aspects of the case, his options, sentencing possibilities, and reviewed a proposed plea agreement and petition to enter a plea of guilty with the defendant. After that discussion, the defendant rejected the government's plea offer and told me that he wanted to go to trial. On October 1, 2005, I received and analyzed a new plea agreement received from the government, a copy of which is attached and marked Exhibit 2.[2] On October 2, 2005, I again discussed the case with the defendant. I discussed the defendant's options and the proposed plea agreement and the possible sentencing options. I attempted to persuade the defendant that pleading guilty and cooperating with the government was in his best interest, however, my client persisted in insisting on going to trial.

(Filing 116-2, ¶ 5.)

Unlike the other claims of ineffective assistance of counsel at the pretrial stage, Monday has attempted to show that he was prejudiced by his attorney's alleged failure to attempt to negotiate a plea or to inform him of proposed plea agreements. Specifically, Monday contends that he would have received a lesser sentence had he pleaded guilty. However, I find no evidence to support this contention.

Levy's affidavit establishes that "the government consistently refused to consider allowing Mr. Monday to plead guilty to a crime which carried a penalty of less than five to forty years in prison." (Filing 116-2, ¶ 6.) The sentence that Monday actually received was within this range. Thus, in order to prove prejudice, he must show that one or more sentencing factors would have been different had he pleaded

---

[2] The second plea offer proposed a cooperation agreement and provided that Monday would plead guilty to conspiracy to distribute over 500 grams of a methamphetamine mixture, as charged in the indictment. (Filing 116-4, ¶ 1.) The expected drug quantity was again stated to be between 500 grams and 5 kilograms. (*Id.*, ¶ 16.) This would result in a base offense level of 32 or 34.

5

guilty. Monday evidently assumes that he would have received credit for acceptance of responsibility simply by pleading guilty, but this assumption is wrong.

"A defendant who enters a guilty plea is not entitled to an adjustment [for acceptance of responsibility] as a matter of right." U.S.S.G. § 3E1.1, comment 3. In particular, a defendant who admits the conduct comprising the offense of conviction (in this case, conspiracy to distribute methamphetamine), but who does more than to remain silent and put the government to its burden of proof on any relevant conduct beyond the offense (such as proving drug quantity), has been held not entitled to a reduction under the Sentencing Guidelines for acceptance of responsibility. *See United States v. Annis*, 446 F.3d 852, 857-58 (8th Cir. 2006) (defendant's decision to challenge the reliability of his statement regarding methamphetamine quantity was inconsistent with acceptance of responsibility and outweighed the decision to plead guilty–his lone act of cooperation), *cert. denied* 127 S.Ct. 26 (2007).

Much like the defendant in *Annis*, Monday confessed to police that he received from a co-conspirator (Brian Jurgens) around 2 ounces of methamphetamine every other day for a 5 month period – in other words, between 4 and 5 kilograms. Monday testified at trial that he had only purchased a total of 2 or 3 ounces from Jurgens (Transcript, at 317:25), and claimed that he had lied to the police in order to get Jurgens arrested and to attempt to get himself out of jail (Transcript, at 327:25-328:15). Monday claimed that he was only responsible for about 6 ounces total. (Transcript, at 329:18-330:2.) Neither the jury nor I believed Monday's testimony. Consequently, I determined that Monday should not receive a reduction in his sentence for acceptance of responsibility. (Sentencing Transcript, at 23:8-16.) This determination was upheld on appeal, with the Eight Circuit stating:

> While Monday did not contest his conspiratorial guilt, that alone does not entitle him to an adjustment under U.S.S.G. § 3E1.1 as a matter of right. [*United States v. Winters*, 416 F.3d 856, 860 (8th Cir. 2005).] Instead, when determining eligibility for an adjustment under U.S.S.G. § 3E1.1 a court looks to, among other things, whether or not the

defendant "'truthfully admit[s] the conduct comprising the offense(s) of conviction, and truthfully admit[s] or not falsely den[ies] any additional relevant conduct for which the defendant is accountable.'" *United States v. Kiel*, 454 F.3d 819, 824 (8th Cir.2006) (quoting USSG § 3E1.1, comment. (n. 1 (a))). "'[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.'" *Kiel*, 454 F.3d at 824 (quoting U.S.S.G. § 3E1.1, comment. (n. 1(a))). Although Monday admitted he conspired only after his trial began, the district court, in an abundant exercise of discretion, found him to be "eligible" for an acceptance adjustment. The district court was also well within its discretion to determine that Monday had not fully accepted responsibility for his crime. Not only did he contest the drug quantity he was charged with, resulting in a continuing trial on that issue, the district court determined that he had not testified truthfully at trial regarding his involvement with methamphetamine use and purchases. Section 3E1.1 requires not only that a defendant "show[ ] a recognition and affirmative acceptance of responsibility for relevant conduct, and remorse for that conduct," but also that he "must accept responsibility for all of the conduct that is part of his conviction ... [and] not minimize conduct or partially accept responsibility." *United States v. Erhart*, 415 F.3d 965, 971 (8th Cir.2005), *cert. denied*, 546 U.S. 1156, 126 S.Ct. 1181, 163 L.Ed.2d 1138 (2006). "Special emphasis is placed on the defendant's honesty about the factual basis for the offense, rather than an emphasis on whether the defendant pleaded guilty or took the matter to trial." *Id.* The district court and the jury found that the testimony of the Government's witnesses was more credible than Monday's testimony, and we find no clear error in the district court's decision denying Monday's motion for a sentence reduction based on acceptance of responsibility. *See United States v. Tjaden*, 473 F.3d 877, 879 (8th Cir. 2007) ("Whether to grant a reduction for acceptance of responsibility is a factual determination which depends largely on the district court's credibility assessments.") (internal marks omitted).

*United States v. Monday*, 219 Fed.Appx. 604, 605-06 (8th Cir. 2007).

7

There is no reason to believe that the result would have been any different had Monday decided to forego trial and enter a guilty plea. Indeed, at his sentencing hearing, Monday continued to "swear that [he] only had to do with just that little bit" of methamphetamine he had admitted to during his trial testimony, and that he had lied to police about the drug quantity because he "was trying to get Jurgens out of my life at the time." (Sentencing Transcript, at 31:18-32:21.) Monday's § 2255 motion certainly contains no indication that he would have accepted responsibility for all relevant conduct if only there had been no trial.

In summary, Monday cannot prove that he was prejudiced by his attorney's alleged failure to negotiate a plea or to communicate the government's plea offers to him. There is also no evidence that Monday was prejudiced by his attorney's alleged refusal or failure to provide him with copies of discovery materials, to maintain contact, or to discuss the case prior to trial. The government is entitled to summary judgment on all of these "pretrial" claims.

### *B. Claims of Ineffective Assistance of Counsel at Trial*

Monday next complains that his attorney "clearly and openly proclaimed in his opening argument that Mr. Monday was guilty of the charged crimes." (Filing 109, at 17.) This statement is true, with the qualification that there was no concession that Monday was responsible for 500 grams or more of methamphetamine, as charged in the indictment. Levy told the jury: "[C]andidly, it is my belief that the evidence will not support a verdict of below 50 grams so for simplicity's sake, I am acknowledging, as I did on voir dire, that Mr. Monday did in fact enter into an agreement to distribute methamphetamine, did distribute methamphetamine, but in an amount less than 500 grams, more than 50 grams, excuse me." (Transcript, at 61:9-15.)

It is not known why Monday asserts that this concession of guilt amounted to ineffective assistance of counsel. Prior to testifying at trial, Monday told the court outside the presence of the jury that he fully agreed with this trial strategy and

understood the risks involved. (Transcript, at 289:6-307:1.) As the trial turned out, of course, the strategy was unsuccessful. However, "[t]he court does not 'second-guess' trial strategy or rely on the benefit of hindsight[.]" *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006), *cert. denied* 127 S.Ct. 2248 (2007). Rather, "the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective." *Id.* Under the circumstances of this case, it was not objectively unreasonable for defense counsel to concede Monday's guilt at the outset of the trial.

Complaint is also made that Levy "should have never permitted Mr. Monday to take the witness stand to testify against himself." (Filing 109, at 17.) Again, at the time the decision was made by Monday to testify, this was not an unreasonable trial strategy. Monday was advised both by his attorney and by the court that he was not required to testify. Before taking the stand, he was also questioned extensively by the court regarding the voluntariness of his admissions of guilt. (Transcript, at 289:6-307:1.) There is no possible merit to this claim.

Also without merit is Monday's claim that "[d]efense counsel should have compelled Mr. Monday to take a plea barg[a]in before trial; and/or during trial; and/or before the jury rendered a verdict in this matter[.]" (Filing 109, at 17.) As already discussed, there is no evidence that Monday was prejudiced by not pleading guilty. In any event, defense counsel could not have "compelled" Monday to plead guilty. "To be constitutionally valid, a guilty plea must be knowing, *voluntary*, and intelligent." *United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999) (emphasis supplied).

Finally, Monday argues that "[a]ny dispute concerning the amount of drugs ultimately attributed to the defendant should have been contested after Mr. Monday plead[ed] guilty, and during the sentencing hearing that would have been held in this matter." (Filing 109, at 18.) The simple answer to this argument is that if Monday had pleaded guilty to the crime charged, he could not have disputed at sentencing that he was responsible for at least 500 grams of methamphetamine, as charged in the

9

indictment, because that drug quantity was an element of the offense. *See United States v. Sheppard*, 219 F.3d 766, 767 (8th Cir. 2000) (under *Apprendi v. New Jersey*, 530 U.S. 466 (2000)), a drug quantity "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). A plea of guilty admits all of the elements of a criminal charge. *Mack v. United States*, 853 F.2d 585, 586 (8th Cir. 1988).

For the most part, Monday's claims of ineffective assistance of counsel at trial are indistinguishable from each other. Because none require an evidentiary hearing, summary judgment will be entered in favor of the government.

### *C. Claims of Ineffective Assistance of Counsel at Sentencing*

In another related claim, Monday argues that "[d]uring the sentencing hearing, defense counsel was unprepared for the questions posed by the court and failed to state a lawful position to support the defendant[']s claim of entitlement to a two-point reduction in the base offense level used at sentencing for 'acceptance of responsibility' for acknowledg[]ment of his culpability in the charged crimes." (Filing 109, at 20.) It is true that counsel was unable to cite any authority for the proposition that Monday should receive a sentence reduction for acceptance of responsibility after unsuccessfully claiming that his confession was unreliable, but this does not mean that his performance was deficient – it only means that this legal position was not tenable.[3]

---

[3] In order for the trial strategy in this case to succeed, the jury was required to find that Monday was responsible for at least 50 grams, but less than 500 grams, of methamphetamine. Such a verdict would have resulted in a base offense level of 26, 28, or 30, and Monday would have been in a better position to claim entitlement to a 2-point reduction for acceptance of responsibility.

10

I know from personal observation that Mr. Levy, who is a very experienced and capable defense attorney, was well-prepared for the sentencing hearing and that he zealously argued his client's position, both orally at the hearing and in writing in a pre-hearing brief. In fact, Mr. Levy was able to convince me that Monday was "eligible" for acceptance of responsibility even though Monday had put the government to its burden at trial and had not admitted his guilt until after the government had presented its evidence and a motion for judgment of acquittal had been denied. (Sentencing Transcript, at 22:10-23:7.) The only reason Monday did not receive credit for acceptance of responsibility is that his testimony concerning drug quantities was found to be untruthful. (Sentencing Transcript, at 23:8-16.)

Monday also states that "[d]efense counsel's oral motion for a Rule 29 finding at the conclusion of the government[']s case did not invalidate the defendant[']s right to receive a two-point downward adjustment in Mr. Monday[']s base offense level for acceptance of responsibility." (Filing 109, at 20.) To the extent Monday is claiming that he did not receive a 2-point reduction for acceptance of responsibility because his attorney moved for a judgment of acquittal at the close of the government's case, this is untrue. I expressly stated at the sentencing hearing that "I'm not going to deny the acceptance because . . . Levy moved for acquittal . . .." (Sentencing Transcript, at 22:25-23:2.) In short, Monday was not prejudiced by the motion, even though it arguably was inconsistent with acceptance of responsibility.

### D. Claims of Ineffective Assistance of Counsel on Appeal

Monday's final complaint is that his attorney withdrew immediately after his sentence was affirmed on appeal. The record shows that Levy's motion to withdraw was granted by the Eighth Circuit on March 29, 2007, one week after its affirming opinion was issued. (Filings 104-106.) Monday contends that Levy misrepresented to the Court of Appeals that he had conferred with Monday before asking leave to withdraw. Even assuming this to be true, Monday is not entitled to any relief.

The Fifth Amendment does not guarantee a right to counsel for a litigant seeking to file a certiorari petition in the United States Supreme Court,[4] *see Steele v. United States*, ___ F.3d ___, 2008 WL 657847, *1 (8th Cir. Mar. 13, 2008), nor to file a petition for rehearing in the Court of Appeals, *see United States v. Winborn*, No. 8:02CR46, 2005 WL 2977780, *2 (D.Neb. Nov. 7, 2005). "[T]he right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). In any event, Monday has failed to show that he was prejudiced by Levy's withdrawal.

## *II. Monday's Motion for Leave to Amend*

The decision to grant or deny a motion to amend is within the discretion of the district court. *Clemmons v. Delo*, 177 F.3d 680, 686 (8th Cir. 1999) (affirming denial of belated motion to amend habeas petition); Fed. R. Civ. P. 15. A denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Amrine v. Brooks*, ___ F.3d ___, 2008 WL 927607, *8 (8th Cir. Apr. 8, 2008) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 557 (8th Cir.) (citation omitted), *cert. denied* 127 S.Ct. 189 (2006)).

Monday's proposed amended § 2255 motion reads:

> The defendant hereby amends his 28 USC 2255 Motion to include the following issues.
> 1) Was Trial counsel, who was also Appeal counsel ineffective in his representation to a degree that was below the standards of the industry? And if so did it prejudice the [defendant's] case?

---

[4] While the "[f]ailure to advise a defendant of his right to petition for certiorari in the Supreme Court violates his right to effective assistance of counsel[,]" *United States v. Thomas*, 562 F.2d 576, 577 (8th Cir. 1977), it is undisputed that Monday was informed by Levy of his right to file a pro se petition and was instructed when and how to do so. (Filing 116-6.)

12

>    2) Was the indictment faulty on it's [sic] face because it stated that the defendant was charged in a "Conspiracy to distribu[t]e 500 grams or more of Methamphetamine," but had no upper amount level, then stated in court that the defendant was responsible for seven lbs of Methamphetamine?
>    3) Did the court err in allowing the PSI writer to improperly calculate the defendant's criminal history category as "Category 5" when he only had 4 criminal history points?
>    4) Did the court err in sentencing the defendant to 292 [months] which was clearly disproportionate to his codefendants as a penalty for taking part of the issues to trial?
>    5) Did the court err in allowing "prejudicial testimony that held no 'probative value' regarding an incident in which the defendant had been acquitted in the lower court" admitted and then to be used to enhance the defendant's sentence?

(Filing 127, at 1-2.)

The first claim adds nothing to the ineffective-assistance-of-counsel claims alleged in Monday's original § 2255 motion, which have been determined to be without merit. The other claims are procedurally defaulted. Issues that could have been, but were not, raised on direct appeal are deemed waived and cannot be asserted for the first time in a § 2255 motion, absent a showing of cause and actual prejudice, or a showing of actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Swedzinski v. United States*, 160 F.3d 498, 500 (8th Cir.1998). Even liberally construing the amended motion to allege that Monday received ineffective assistance of counsel because these four claims were not raised on direct appeal, I find there was no prejudice.

Monday claims that he could not be held responsible for at least 1.5 kilograms of methamphetamine because the indictment only charged him with 500 grams or more. He is wrong as a matter of law. The district court can impose a sentence based on a higher drug quantity determination than the jury's finding so long as the sentence does not exceed the statutory maximum of the convicted offense. *United States v.*

13

*Hessman*, 493 F.3d 977, 984 (8th Cir. 2007), *cert. denied* 128 S.Ct. 1100 (2008). The statutory maximum sentence for distributing 500 grams or more of methamphetamine is life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A).

Monday claims that he was erroneously charged with 17 criminal history points in the presentence investigation report. Monday claims that he only should have received 4 points pursuant to Sentencing Guideline § 4A1.1(c). This is incorrect. The report complied with that section and did not assess any criminal history points for convictions for "speeding (x5); driving with a suspended license (x11); minor in possession of alcohol; obstruction of a peace officer; making a false statement; and no valid operator's license (x2)." (Filing 79, ¶ 52.) Monday also complains that 2 points were added because the instant offense was committed less than 2 years after his release from jail for driving with a suspended license. (Filing 79, ¶ 54.) This was done in compliance with Sentencing Guideline § 4A1.1(e). In any event, I was convinced "to depart from criminal history category 6 to criminal history category 5 because I [found] that the serial driving under suspension convictions, while not insignificant, tend to overstate the likelihood of recidivism and further because I [found] that the defendant's criminal history category as a whole – criminal history, rather, rather, as a whole – although equal and far beyond the number of points necessary to put him in criminal history category 6 – overstates the likelihood of recidivism as well." (Sentencing Transcript, at 28:15-24.)

Monday next claims that his sentence was disproportionate to the sentences of his co-conspirators. There is no reasonable probability that this claim would have been successful on appeal. *See United States v. Watson*, 480 F.3d 1175, 1177 n. 3 (8th Cir.) ( "We have repeatedly rejected this argument [that a defendant is entitled to a downward departure under the Guidelines in order to reduce the disparity between his sentence and a co-defendant's sentence]."), *cert. denied* 128 S.Ct. 305 (2007); *United States v. Anderson*, 446 F.3d 870, 877 (8th Cir. 2006) ("[T]he district court correctly recognized that a sentencing disparity among co-defendants is not a proper basis for a departure under the guidelines."); *United States v. Polanco*, 53 F.3d

893, 897 (8th Cir. 1995) ("Disparity between sentences imposed on codefendants is not a proper basis for departure."); *United States v. Granados*, 962 F.2d 767, 774 (8th Cir. 1992) ("A defendant cannot rely upon his co-defendant's sentence as a yardstick for his own; a sentence is not disproportionate just because it exceeds a co-defendant's sentence.").

Finally, Monday claims that it was error to permit testimony that he stabbed one of his co-conspirators, Sandra McMurry. There was no objection made to this testimony at trial, although the prosecutor was cautioned during a bench conference to limit his questioning and to not ask questions about the stabbing for purposes of sentencing. (Transcript, at 217:7-219:1.) Absent any objection to this testimony at trial, there is no reasonable probability that raising this issue on appeal would have changed the outcome. *See United States v. Millard*, 139 F.3d 1200, 1203 (8th Cir. 1998) (where there is no contemporaneous objection to the admission of evidence, an error "will be grounds for reversal only if the error prejudices the substantial rights of the defendant and would result in a miscarriage of justice if left uncorrected.") (quoting *United States v. Swanson*, 9 F.3d 1354, 1356 (8th Cir. 1993)). To the extent Monday may be claiming that he was denied effective assistance of counsel at trial because no objection was made to this testimony, I also find that the evidence was, in fact, admissible. The performance of an attorney is not deficient because the attorney failed to object to admissible evidence. *Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir. 1996). In addition, even if there were some question concerning the admissibility of this evidence, there is no reasonable probability that its exclusion would have changed the outcome of the trial.

IT IS ORDERED that:

1. The government's motion for summary judgment (filing 114) is granted.

2. The defendant's § 2255 motion (filing 109) is denied.

3.	The defendant's motion for leave to amend (filing 126) is denied.

4.	Judgment shall be entered by separate document.

April 15, 2008.                    BY THE COURT:

                                   s/ *Richard G. Kopf*
                                   United States District Judge